## Miller and Wife's Appeal.

*Distribution of Intestate's Real Estate to Nephews and Nieces under Acts of* 1833 *and* 1835.—*Rule as to Distribution* per stirpes *and* per capita.

1. Under the Act of 8th April 1833, sections 4th and 14th, nephews and nieces, when the heirs at law of a deceased uncle, take in the distribution of his estate *per capita* and not *per stirpes*.

2. One died intestate, without issue, leaving as his heirs at law the children of his three deceased brothers, one leaving one child, another four children, and the third nine, fourteen in all, a majority of whom petitioned the Orphans' Court to award an inquest to make partition of his real estate, into as many purparts as there were children, on the ground that they took *per capita*, which mode of partition being decreed, an inquest was held and partition made into fourteen purparts. Judgment being entered thereon, on appeal by the only child of one of the brothers of intestate, who claimed partition *per stirpes* and thereunder one-third part of the estate, it was *held:* that, as in the case of grandchildren in lineal descent, nephews and nieces among collaterals, when heirs at law, were entitled to take in equal shares *per capita*.

3. Article 2d of section 4th of the Act of 8th April 1833, is not repealed by the 2d section of the Act 27th April 1855, providing that collaterals shall take by representation; for that section in the Act of 1855, is but an extension of article 4th section 2d of the Act of 1833, to the case of collaterals, and as the first did not affect grandchildren, so the second does not touch the case of nephews and nieces, nor does it repeal the 8th section of the Act of 1833, except *pro tanto*.

4. It seems, that the rule is, that when all the heirs are in equal degree of consanguinity to the decedent, they take *per capita;* but when they stand in different degrees, then the more remote take by representation.

APPEAL from the Orphans' Court of *Allegheny county*.

This was an appeal by Mary W. Miller and her husband, John F. Miller, from the decree of the Orphans' Court, confirming the partition made of the real estate of William Chess, deceased.'

William Chess died in the year 1856 intestate, without issue,

and seised of the property of which partition is sought to be made. He had three brothers, Andrew B. Chess, Robert Chess, and John Chess, all of whom died in the lifetime of the intestate, leaving lawful issue their heirs at law, to wit: *Andrew B. Chess* died leaving issue one child, Mary W., intermarried with John F. Miller. *Robert Chess* left issue four children, to wit: John W. Chess, Henry Chess, Eliza Chess intermarried with George Nicholson, and Lydia Ann intermarried with John B. Herron. *John Chess*, the third brother, died, leaving as his survivors, Moses Chess, William Chess, John Chess, Goodman Y. C. Chess, Eliza Foster, Jane intermarried with William Frew, Mary Ann Chess, Nancy Chess, and Finley Chess.

On the 22d day of October 1859, Goodman Y. C. Chess, by William Frew, his guardian, J. G. McIntire, vendee of John Chess, one of the heirs of John Chess, deceased, John W. Chess, Moses Chess, William Chess, Elizabeth Chess, Mary Ann Chess, William Frew, and Jane Frew his wife, filed their petition in the Orphans' Court of Allegheny county, praying the court to award an inquest to make partition of the real estate into as many purparts as there are children of the respective brothers, alleging that the heirs at law are entitled to take *per capita;* and on the same day the court granted the prayer of the petitioners and awarded an inquest to make partition of the real estate.

On the 29th day of October 1859, Mary W. Miller and John F. Miller, her husband, duly presented their petition to the Orphans' Court, praying that partition might be made by which the said nephews and nieces should take *per stirpes* and not *per capita;* that she, the said Mary, was entitled to the same portion of the said property as if her father had been living at the death of the intestate.

The petition of Mary W. Miller and her husband, John F. Miller, was refused by the Orphans' Court, and exception was taken to this ruling. The court decreed a partition by which each of the parties are entitled to take an equal share in the estate of the said William Chess, deceased. Inquest was held and partition was made, in conformity to the prayer of the original petitioners, and the estate was divided into *fourteen* purparts.

Judgment was entered by the court (MELLON, J.) on the return of the inquisition confirming the same, subject to the exception already taken, from which judgment this appeal was taken to the Supreme Court.

*C. Shaler* and *J. T. Cochran*, for appellants, contended that the heirs at law in this case, took by representation; that as by the 4th and 8th sections of the Act of April 8th 1833, represen-

tation amongst collaterals is prohibited "after brothers' and sisters' children," it follows, that in such cases it *is* admitted, and that there is nothing in the fourteenth or any other section of the Act of 1833, which contradicted this rule of distribution; that it did not follow, because under this section heirs are to hold real estate as "tenants in common," that they must necessarily hold in equal proportions.

If it be held, that under the Act of 1833, where there is only one class of heirs standing in the same degree of consanguinity to the intestate, they shall take equally, we submit that the 14th section of the Act of April 8th 1833 is repealed by the 2d section of the Act of 27th April 1855, which provides that grandchildren of brothers and sisters shall take *per stirpes*, and if so, the nephews and nieces of this intestate take by representation. The Act of 1855 does not permit those to inherit who were unable to take prior to its passage. It does not say *who* shall take, but *how* they shall take. By the Act of 1833, grandchildren of deceased brothers and sisters were entitled to inherit *per capita*, when they were the nearest of kin to the decedent. By the Act of 1855 they take *per stirpes*. If the Act of 1855 contemplated a division by representation among the grandchildren of a deceased brother and the children of a deceased uncle, where an intestate leaves some of each of these classes, and no other heirs, the principle here contended for still governs, because they both stand in the same degree of consanguinity to the intestate; and again, if the Act of 1855 allows representation among the children of an intestate's nephews and nieces as a class, why should not nephews and nieces as a class take by representation also?

*R. & S. Woods*, with whom was *C. Hasbrouck*, for appellees, insisted that article 2d of the 14th section of the Act of 1833, was not repealed nor altered by the Act of 27th April 1855, which only provided for the distribution among those standing in different degrees of consanguinity to the intestate, by permitting the children of deceased nephews and nieces to inherit with nephews and nieces.

The opinion of the court was delivered, November 4th 1861, by

READ, J.—William Chess died intestate and without issue, leaving as his heirs at law the children of his three brothers, who had died before him. One brother left one child, the present appellant; another brother four children; and the third brother nine children, making fourteen nephews and nieces of the decedent, and the appellant contends that they take *per stirpes* and not *per capita*, which would give her one-third of the property which was the subject of the partition.

[Miller's Appeal.]

By the 2d article of the 2d section of the Act of 8th April 1833, if the intestate shall leave grandchildren but no child or other descendant being the issue of a deceased grandchild, the estate shall descend to and be distributed among such grandchildren. By the 2d article of the 4th section, if the intestate shall leave neither brother nor sister of the whole blood, but nephews or nieces, being the children of such deceased brother or sister, the real estate shall descend to and vest in such nephews and nieces.

The revisers, in their remarks on the 4th section, say, "the only alteration of the present law will be found in the 2d article, which gives to nephews and nieces where such only are living, an equal share of the estate, instead of dividing the estate among them as at present, according to the stocks. Thus, if an intestate die without nearer relations than the children of his deceased brothers, they will not take equally under the existing law, but the children of one brother will take one share between them; the children of the next brother another share, and so on, thus producing sometimes great, and we think, unnecessary inequality. The rule is different with respect to grandchildren, and it appears to us desirable that the law should be uniform and harmonious in this as well as in other respects."

It is provided by the 8th section, that there shall be no representation admitted amongst collaterals after brothers' and sisters' children. The revisers point out the reasons why they have restored a provision which formed a part of the Act of 1705, and continued to govern the distribution of estates until the Act of 1794, from which it was omitted, but whether through inadvertence or design they had not the means of ascertaining. I have, in the course of my practice, experienced the very difficulties pointed out by the revisers, in tracing out remote collateral kindred under the Act of 1794.

Under the Act of 1833, deliberately altering the old law and placing nephews and nieces on the same footing as grandchildren, it is clear that the parties to this partition took *per capita*.

It is, however, urged very strenuously that the 2d article of the 4th section is repealed by the 2d section of an act "to amend certain defects of the law for the more .just and safe transmission and secure enjoyment of real and personal estate," passed 27th April 1855 (P. L. 368), by which it is enacted "that among collaterals, when by existing laws entitled to inherit, the real and personal estate shall descend and be distributed among the grandchildren of brothers and sisters, and the children of uncles and aunts by representation, such descendants taking equally among them such share as their parent-would have taken if living." This is but in fact an extension of article 4th, &c., of section 2, to the case of collaterals, and as

[Miller's Appeal.]

the first did not affect grandchildren, so the second does not touch the case of nephews and nieces, nor does it repeal the 8th section, except *pro tanto*, and therefore nephews and nieces still remain in the same position as grandchildren, and take *per capita* and not *per stirpes*.

The court below were therefore right in deciding that Mrs. Miller took only a fourteenth part and not a third of the estate of the decedent.

Appeal dismissed at the costs of the appellant.